IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEREMY M. WRIGHT, #B-74037, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 11-cv-225-MJR |
| | ) | |
| JACKIE MILLER, COUNSELOR | ) | |
| HENDRICKS, WARDEN of MENARD, | ) | |
| and S. A. GODINEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This matter comes before the Court for review of Plaintiff Jeremy Wright's First Amended Complaint (Doc. 10), filed in accordance with this Court's previous order (Doc. 7). Plaintiff seeks relief for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Preliminary review of the First Amended Complaint must be conducted pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

This Court dismissed Plaintiff's original complaint (Doc. 1) because he sought relief against several defendants not residing in this district, and because he had not yet exhausted the

grievance process on his claims arising from his confinement in the Menard Correctional Center. Plaintiff has now received a final ruling from the Administrative Review Board denying his request to be returned to Protective Custody (Doc. 10, p. 10). In his complaint, Plaintiff seeks an injunction to permanently return him to protective custody while he serves out his 100 year sentence for murder, and transferring him back to Pontiac Correctional Center.

**Factual Allegations**

This summary of the facts is drawn from the First Amended Complaint (Doc. 10). Plaintiff had been in protective custody in the Illinois Department of Corrections on account of gang-related threats for over ten years (March 30, 1999, to November 11, 2009), until he was placed in segregation for impeding an investigation and sexual misconduct with a male inmate. Plaintiff was told he must request protective custody status again upon his release from segregation. He made such a request on June 11, 2010, but was denied protective custody on August 2, 2010, while at Pontiac Correctional Center. Plaintiff was returned to general population.

On February 9, 2011, Plaintiff was transferred to Menard Correctional Center. On February 13, 2011, while in the yard, he was approached by three inmates belonging to the Latin Kings, the gang to which Plaintiff had formerly belonged. Plaintiff had been threatened by Latin Kings (LK) before because he left the gang, is bisexual and burned off his teardrop tattoo. One of the inmates who accosted Plaintiff on February 13, 2011, told him, "[He]'d better not come out of [his] cell anymore or [he]'d know what [he] had coming" (Doc. 10, p. 5). Plaintiff did not know the name of the inmate who issued the threat, but knew one of the three as "Encino-man." Plaintiff stayed in his cell and requested protective custody, but nothing was done.

On February 14, Plaintiff wrote an emergency grievance, and was taken to Internal Affairs two days later to discuss his request. Plaintiff was interviewed by Officer Nehring (who is not a defendant) regarding his protective custody (PC) request, but was told the request would likely be denied because he could not identify the person who issued the threat, even though Officer Nehring stated that he believed that homosexual LK's are in danger. Officer Nehring denied Plaintiff's request to be allowed to identify the LK member using a photo lineup. Plaintiff also spoke to Defendant Hendricks and a psychiatrist about his PC request, explaining that he needed PC because the LK's had threatened him because of his homosexual lifestyle and renunciation of his LK membership. Defendant Hendricks stated that "the Kings were no sissys [sic] and would stab [Plaintiff's] ass up for being gay" (Doc. 10, p. 6). Nevertheless, Defendant Hendricks denied Plaintiff's PC request on February 16, 2011.

Defendant Menard Warden concurred with the denial of PC and placed Plaintiff int "kickout" status. Plaintiff filed a grievance over the PC denial. Defendant Jackie Miller, the Administrative Review Board (ARB) Chair, held a hearing on the grievance on May 10, 2011. Defendant Miller informed Plaintiff that he must provide names, specific threats and staff confirmation before she would approve him for PC status. Plaintiff did not know the name of the inmate who threatened him, and had been unable to move around the gallery to determine what cell the inmate was in. Plaintiff had submitted a FOIA request seeking a copy of the Internal Affairs report on their investigation of the incident, which Plaintiff had signed, but he had not received a copy. Plaintiff told Defendant Miller that if he were kicked out of PC, he feared it would take another two to three weeks before he might get back into PC and he could be beat up or stabbed in the meantime. Defendant Miller told Plaintiff, "at least you can sign back in and

hopefully [you won't] be assaulted before [you can] do so" (Doc. 10, p. 7). Defendant Miller denied Plaintiff's PC request on May 13, 2011. Defendant Godinez (the Acting Director of the Illinois Department of Corrections) also approved the order removing Plaintiff from PC.

Plaintiff was returned to general population on May 26, 2011, and within an hour, an inmate named Leon Blanchard started spreading the word that Plaintiff was "a faggot, stool pigeon ex-LK" (Doc. 10, p. 7). Plaintiff made another request for PC and it appears he was placed there temporarily.

Between May 10, 2011, and May 26, 2011, Plaintiff was able to learn the names of two individuals who had also threatened him. On several occasions, these inmates yelled to Plaintiff while passing near his cell going to chow, that he had "better stay in PC or they are going to 'fuck [him] up'" (Doc. 10, p. 7). Plaintiff informed unnamed staff of the continued threats, but no action was taken. Plaintiff has also been informed by several inmates that there is an "S.O.S. (smash on sight)" order on him by the LK's, and Plaintiff fears that, if he is ever returned to general population, this threat will be carried out.

Plaintiff included in his complaint a copy of his March 21, 2011, grievance over the denial of PC (Doc. 1, p. 8-9). In it, he alleges a conspiracy among prison officials to retaliate against him by preventing his return to PC, because of his refusal to cooperate in an investigation of staff corruption at Pontiac Correctional Center in November 2009. That refusal to cooperate was one reason for Plaintiff's placement in disciplinary segregation in November 2009. Plaintiff alleges that one Pontiac prison official told Plaintiff that, because of Plaintiff's non-cooperation, the official would contact Menard Internal Affairs, as well as Defendant Miller, to make it more difficult for Plaintiff to get back into PC.

**Discussion**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a failure to protect claim, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

A defendant in a failure to protect claim cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843 (a substantial risk of harm to a prisoner may exist where he "faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk"); *see also Hill v. Godinez,* 955 F. Supp. 945, 949 (N.D. Ill. 1997) (summary judgment denied for defendant who refused plaintiff's request for protective custody where plaintiff "apparently did everything except identify by name" the inmates who were threatening him, and plaintiff was then attacked by gang members). Under this authority, Plaintiff should not have been required to identify by name the inmates who

threatened him, in order for the threat to be considered "specific" or credible.

When a plaintiff has been attacked by another inmate, to succeed on a failure to protect claim, he must show that defendants knew that there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

> A prisoner's interest in safety does not lead to absolute liability, however, any more than the state is the insurer of medical care for prisoners. . . . [T]he eighth amendment has a mental component. The eighth amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is "punishment" depends on the mental state of those who cause or fail to prevent it. . . . Other mental states, including total indifference to risks, come so close to deliberateness that courts treat them alike. Thus judges speak . . . of "deliberate indifference" or "recklessness" as the functional equivalent of intent. Although there are shadings of meaning here, total unconcern for a prisoner's welfare – coupled with serious risks – is the functional equivalent of wanting harm to come to the prisoner.

*McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

In Plaintiff's case, he has not yet been attacked or suffered physical injury, but has received several specific threats from other inmates that he will be attacked if he comes out of his cell or leaves PC. If Plaintiff were bringing a claim for failure to protect *after* having been the victim of an attack following the specific threats he has described herein and reported to prison officials, he would have pleaded sufficient facts for his deliberate indifference claim to proceed beyond preliminary review. Plaintiff is in effect seeking to mitigate his potential damages from a threatened attack, by requesting prospective injunctive relief in the form of permanent protective

custody status based on ongoing specific threats. Plaintiff has repeatedly and promptly complained to Defendants about the threats to his safety, yet his request for a return to permanent PC was denied.

The Supreme Court in *Farmer* indicated that injunctive relief would be an appropriate remedy for a prisoner under a credible threat of attack by another inmate. *Farmer v. Brennan*, 511 U.S. at 850-851 (district court on remand should address whether injunction would be appropriate based on evidence to be adduced regarding the likelihood of transsexual inmate's transfer to a setting where he could face greater threat). Prior to *Farmer*, courts have recognized that a prisoner need not wait until he is actually assaulted before he may obtain relief. *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir. 1980); *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001).

It appears from Plaintiff's First Amended Complaint that, at the time he filed it, he was again in PC based on the newest threats made to him after Defendants denied his earlier (February 2011) PC request. However, based on the sequence of events leading to the denial of Plaintiff's earlier request for permanent/ongoing placement in PC status, Plaintiff appears to be at risk of being returned again to general population. Defendants Hendricks and Miller denied Plaintiff's earlier PC request despite their open acknowledgment that homosexual ex-LK members were at risk of physical attack.

Before a court may award permanent injunctive relief, a party must demonstrate that (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the

injunction is granted; and (5) the injunction will not harm the public interest.  *Old Republic Ins. Co. v. Employers Reinsurance Corp.,* 144 F.3d 1077, 1081 (7th Cir. 1998); *see also Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987).  At this stage of the litigation, it cannot be said that Plaintiff will be unable to succeed on the merits, or be unable to meet the other criteria he must show to obtain the permanent injunction he seeks.  Therefore, his complaint cannot be dismissed.

**Disposition**

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **MILLER, HENDRICKS, MENARD WARDEN** and **GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address

information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED July 7, 2011.**

                                                **/s/ Michael J. Reagan**
                                                **MICHAEL J. REAGAN**
                                                **U.S. District Judge**